**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL SCHROLL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 24-1349-JLH |
| DNSFILTER, INC. and KEN CARNESI, | ) ) |
| Defendants. | ) ) ) ) |

**<u>MEMORANDUM OPINION</u>**

January 28, 2026

**JENNIFER L. HALL, U.S. DISTRICT JUDGE**

Pending before the Court is a Motion for Summary Judgment filed by Defendants DNSFilter, Inc. ("DNSFilter") and Ken Carnesi ("Carnesi"). (D.I. 108.) For the reasons below, Defendants' Motion for Summary Judgment is GRANTED-IN-PART and DENIED-IN-PART.

## I.  FACTS

Viewed in the light most favorable to Plaintiff, the relevant facts are as follows. DNSFilter is a cybersecurity company co-founded by Plaintiff Michael Schroll and Defendant Ken Carnesi in 2015. (D.I. 110 at A0036.) Both Schroll ("Plaintiff" or "Schroll") and Carnesi were on DNSFilter's board of directors, and Schroll was one of four or fewer board members from the company's inception until his resignation. (D.I. 110 at A0345; D.I. 111 ¶ 1; D.I. 116 ¶ 1.) In mid-2021, DNSFilter was amid the due diligence phase of a Series A funding transaction. On the morning of June 8, 2021, Schroll and Carnesi and two others participated in a Zoom meeting. (D.I. 111 ¶ 4; D.I. 116 at 1–2 ¶ 4.) The meeting lasted almost an hour, and it was recorded.[1]

During the meeting, Carnesi told Schroll (i) that one or more DNSFilter employees had complained that Schroll made inappropriate sexual comments during a work event on Friday, May 28, 2021, and (ii) that Schroll had improperly shared confidential information about the funding transaction to individuals who should not have received it. (D.I. 110 at A0537–39.) Carnesi then stated, "[B]ased off of everything I've laid out, we're at the point right now where we believe it's the right time to end the relationship between you and DNSFilter." (D.I. 110 at A0539.)

Schroll asked for specifics about "what has been said that I said," but he didn't deny making comments of a sexual nature at the work event. (D.I. 110 at A0541.) And Schroll acknowledged

---

[1] The record before the Court contains a copy of an audio recording of the meeting (D.I. 112; D.I. 110 at A0034) as well as a transcript of the meeting (D.I. 110 at A0536–79). The Court has reviewed both in their entirety.

2

that he had shared confidential information. (D.I. 110 at A0563–64 ("Well, that's a f[-]up on my end . . . .").)

Schroll asked what the next steps were. Carnesi told Schroll that he would be terminated for cause if he didn't resign. And Carnesi told Schroll that he would give him three documents: (1) a board resignation letter to be signed by Schroll; (2) a stock repurchase agreement under which Schroll would transfer some (not all) of his shares in DNSFilter in exchange for a total payment of $120; and (3) a severance agreement, which provided for (among other things) severance pay and a broad release of claims. (D.I. 110 at A0555; D.I. 111 ¶ 4; D.I. 116 at 1–2 ¶ 4.) Carnesi imposed a same-day 2:00 p.m. deadline to sign the resignation letter and stock repurchase agreement and a seven-day deadline to sign the severance agreement. (D.I. 110 at A0555; D.I. 111 ¶ 4; D.I. 116 at 1–2 ¶ 4.) Carnesi told Schroll that the reason for the 2:00 p.m. deadline was an "all-hands" meeting scheduled for 2:00 p.m., during which DNSFilter employees would either be told that Schroll resigned or was let go. (D.I. 110 at A0226–27, A0546–50.)

Schroll stated, "Well let me just look at these documents—I mean, I just want to make sure we're on the same page and I'm reading this correctly. . . . That, that you guys have expectation that I forfeit $11.5 million worth of shares because of some accusation from someone who I haven't even been told exactly or given a chance to, to discuss or defend that." (D.I. 110 at A0555–56.) Carnesi responded, "Well, I don't know the dollar amount, but yeah, basically that's—I think that's, that's one way to look at it, you know? . . . Now, to be clear, we can't make you do this, right? This is—we can't make you do it. It's something that we're personally asking . . . ." (*Id.* at A0556–57.) But Carnesi then told Schroll that the Board could act to take some—or even all—of Schroll's shares anyway:

> But what I can tell you is that—and this is what I don't want to see happen, but it can happen. Like, I don't know that it will or it won't,

3

> but it can happen and it's already been laid out and discussed and it's fully within the rights, just so you know—is that like, the Board could put an action into place that could take part of it back or all of it, all the equity back, and they're within their rights to do that . . . . Because they can enact something called a clawback by putting in a clause for firing for cause, and that will apply retroactively, 30 days looking back. . . . Meaning—I'm just saying, like—what I mean by that is not, not if you agreed to this that's still going to happen. I'm saying that even if you say, 'Well, I resign right now,' that can still happen, you know? . . . [I]t's something that's been discussed and the document is prepared. So I don't want to—I don't want to do that . . . .

(*Id.* at A0558–60.)

Following the meeting, Carnesi sent Schroll an email that reiterated the deadlines and attached the three documents. (D.I. 110 at A0001–19.) Afterward, Carnesi told Schroll that he "thought he could sell" DNSFilter's board on reducing the number of shares being "sold" by Schroll under the stock repurchase agreement (from 1,200,000 to 1,000,000), and the agreement was revised accordingly. (D.I. 110 at A0219–22; D.I. 115 at SA0133; D.I. 111 ¶ 9; D.I. 116 at 4–5 ¶ 9.)

At 1:42 p.m., Schroll wrote Carnesi to ask what needed to be accomplished before the 2:00 p.m. meeting, and Carnesi wrote back that "ideally" all three documents would be signed but that he could not "force the severance one" until seven days later. (D.I. 110 at A0021–22.) Schroll signed the resignation letter, severance agreement, and stock repurchase agreement at 2:15 p.m., 2:18 p.m., and 2:19 p.m., respectively, on June 8, 2021. (D.I. 111 ¶ 11; D.I. 116 at 5 ¶ 11.)

Several provisions of the severance agreement are relevant to Defendants' motion for summary judgment. First, the severance agreement entitled Schroll to receive six-months' severance pay, which amounted to $65,717.90. (D.I. 110 at A0023; D.I. 111 ¶¶ 18–19; D.I. 116

4

at 6 ¶¶ 18–19.)  The parties do not dispute that Schroll received that amount and kept it.[2]  (D.I. 111 ¶ 18; D.I. 116 at 6 ¶ 18.)

Second, the severance agreement contains a broad "Release of Claims," which provides (in pertinent part):

> 4. <u>Release of Claims</u>.  In consideration of the Severance set forth in Section 4 above, the receipt and sufficiency of which is hereby acknowledged, Employee, on behalf of the Employee and the Employee's executors, heirs, administrators, assigns, and anyone claiming by, through, or under them, hereby irrevocably (except as explicitly set forth herein) and unconditionally releases and forever discharges the Company, its current, former and future parents, subsidiaries, affiliated companies, related entities, direct and/or indirect owners, stockholders, investors, employee benefit plans, and each of its and their current, former and future fiduciaries, predecessors, successors, officers, directors, managers, direct and/or indirect owners, stockholders, debt holders, agents, representatives, employees and assigns (collectively, the "**Releasees**") from any and all claims, causes of action, and liabilities as to any matter whatsoever up through the date of the Employee's execution of the Agreement, including, without limitation:
>
> (a) any and all claims relating to or arising from Employee's employment relationship with the Company and any predecessor of the Company, and the termination of that relationship;
>
> (c)[3] any and all claims for wrongful discharge of employment; constructive discharge; termination in violation of public policy; discrimination; harassment; retaliation; breach of contract, both express and implied; breach of a covenant of good faith and fair dealing, both express and implied; promissory estoppel; negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional

---

[2] Three years later, on June 6, 2024, Schroll sent DNSFilter a demand letter in which he offered to return the severance pay. (D.I. 110 at A0272.)  Schroll filed this suit the next day.

[3] The record contains two versions of the severance agreement: one version sent by Carnesi to Schroll before the all-hands meeting (D.I. 110 at A0009–19), and another version executed by both parties (*id.* at A0023–33).  The parties do not seem to dispute that the executed version's sections are misnumbered, including the various sub-provisions of the Release of Claims provision.  (D.I. 111 ¶¶ 12–13 & n.2; D.I. 116 at 5–6 ¶¶ 12–13.)  Because the relevant provisions are otherwise substantively identical, I will cite to the executed version of the severance agreement.

5

> interference with contract or prospective economic advantage; unfair business practices; defamation; libel; slander; negligence; personal injury; assault; battery; invasion of privacy; false imprisonment; and conversion . . .

(D.I. 110 at A0025.)

Third, the severance agreement contains a "No Representations" clause:

> 18. <u>No Representations</u>.  Employee represents that he/she has had an opportunity to consult with an attorney, and has carefully read and understands the scope and effect of the provisions of this Agreement.  Employee has not relied upon any representations or statements made by the Company that are not specifically set forth in this Agreement.

(D.I. 110 at A0031.)

Fourth, the severance agreement contains the following "Breach; Forfeiture of Equity" clause:

> 12. <u>Breach; Forfeiture of Equity</u>
>
> (a) Employee acknowledges and agrees that, without prejudice to any other available legal or equitable remedies, any material breach of this Agreement shall entitle the Company immediately to recover and/or cease providing the consideration provided to Employee under this Agreement, except as provided by law.  All other provisions of this Agreement shall remain in full force and effect.  Except as provided by law, Employee shall also be responsible to the Company for all costs, attorneys' fees, and any and all damages incurred by the Company in: (a) enforcing Employee's obligations under this Agreement, including the bringing of any action to recover the consideration; and (b) defending against a claim or suit brought or pursued by Employee in violation of the terms of this Agreement . . . .

(D.I. 110 at A0029–30.)

## II. PROCEDURAL HISTORY

Almost three years later, on June 7, 2024, Plaintiff filed this suit in the District Court for the City & County of Denver.  Plaintiff's Complaint contains five claims: (1) a declaratory judgment that the parties' agreements are voidable on grounds of duress, invalid, and

6

unenforceable against Plaintiff; (2) fraudulent inducement; (3) conversion; (4) civil conspiracy; and (5) unjust enrichment.  On July 9, 2024, Defendants removed the case to the U.S. District Court for the District of Colorado.  On December 9, 2024, the Colorado District Court granted Defendants' Motion to Transfer to this Court, and on December 11, 2024, this case was assigned to me.  On April 8, 2025, Defendants filed a counterclaim for breach of contract, alleging that Plaintiff materially breached the severance agreement by filing this suit.  On July 31, 2025, Defendants moved for summary judgment.  The motion is fully briefed.  (D.I. 108–11, 114–16, 122–23.)

### III. LEGAL STANDARDS

#### A. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden is on the movant to demonstrate the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)).  A factual dispute is only genuine if "the evidence is such that a

7

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

## IV.  DISCUSSION

Defendants seek summary judgment in their favor on all of Schroll's claims. Defendants argue (1) that all of Schroll's claims are barred by the "Release of Claims" provision in the severance agreement; (2) that the undisputed facts demonstrate that the severance agreement is not unenforceable due to duress because there was no duress and because Schroll ratified the severance agreement; and (3) that the severance agreement is not unenforceable due to fraud in the inducement because it contains an anti-reliance clause. Defendants also argue that they are entitled to summary judgment on their counterclaim for breach of contract because paragraph 12 of the

severance agreement obligates Schroll to pay all costs and fees incurred by DNSFilter in defending any suit brought by Schroll.

For the reasons below, I agree with Defendants that the undisputed facts preclude Schroll from demonstrating duress. Accordingly, I will grant summary judgment to Defendants on Schroll's claim for a declaratory judgment that the severance and stock repurchase agreements are unenforceable due to duress.

But I disagree with Defendants insofar as they argue that the anti-reliance provision in the severance agreement precludes Schroll's argument that the severance agreement (including the release in the severance agreement) is unenforceable due to fraud. Because Defendants' arguments in support of summary judgment on the remainder of Schroll's claims all rely on the anti-reliance clause in the severance agreement, and because the anti-reliance clause does not insulate Defendants from fraud claims, the Court will deny summary judgment on the remaining claims. The Court will also deny Defendants' motion for summary judgment on their counterclaim.

**A.     The undisputed facts preclude Schroll from establishing duress.**

Defendants say they are entitled to summary judgment on all of Schroll's claims because the parties' severance agreement released all of Schroll's claims. Schroll argues that the severance agreement and the stock repurchase agreement are unenforceable due to duress.

The parties don't dispute that Delaware law applies. I'll assume, for purposes of the argument only, that the circumstances under which Schroll signed the agreements amount to duress under Delaware law. The problem for Schroll is that duress only renders a contract voidable (at the option of the victim), not void. And under Delaware law, the victim is deemed to have ratified a contract accepted under duress if he "accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul

9

or void it." *Cianci v. JEM Enter., Inc.*, No. 16419, 2000 WL 1234647, at *12 (Del. Ch. Aug. 22, 2000); *see also Standard Gen. L.P. v. Charney*, No. 11287, 2017 WL 6498063, at *16 (Del. Ch. Dec. 19, 2017) (citing *Cianci*).

In this case, it is undisputed that Schroll took the severance pay he received under the severance agreement (which released all claims) and he did not seek to rescind that agreement or the stock purchase agreement until nearly three years later. That is a "considerable length of time" under Delaware law. *Graham v. State Farm Mut. Auto Ins. Co.*, No. 87C-AU-11, 1989 WL 12233, at *2 (Del. Super. Ct. Jan. 26, 1989) (granting summary judgment of no duress due to subsequent ratification, explaining that two years is a "considerable and unreasonable length of time" to bring a duress challenge), *aff'd*, 565 A.2d 908 (Del. 1989); *Standard Gen.*, 2017 WL 6498063, at *17 (11 months too long as a matter of law).[4]

Accordingly, the Court will grant summary judgment to Defendant on Schroll's request for a declaratory judgment that the severance and stock repurchase agreements are unenforceable due to duress. But for the reasons explained below, summary judgment is inappropriate on the remainder of Schroll's claims because he still may be able to establish that the release in the severance agreement is unenforceable for another reason.

---

[4] The Court rejects Schroll's argument that he wasn't in a position to claim duress until he was no longer "under the false impression that Defendant Carnesi was his friend and defender who had 'negotiated with the board' on Mr. Schroll's behalf to help Mr. Schroll get the best possible outcome in the face of baseless and hurtful allegations." (D.I. 114 at 14.) The clock to ratify a contract formed under duress via silence or acquiescence starts "after opportunity is afforded to annul or void it." *Cianci*, 2000 WL 1234647, at *12; *see also* Restatement (Second) of Contracts §§ 380, 381 (party seeking to avoid contract for duress must act within reasonable time after circumstances that made the contract voidable have ceased to exist).

### B. Because the Court rejects Defendants' argument that the anti-reliance clause shields them from fraud claims, the Court denies summary judgment on the remainder of Schroll's claims.

Although the severance agreement contains a broad release of claims, Schroll says the Court should deny Defendants' motion for summary judgment on the remainder of his claims because the severance agreement is unenforceable due to fraud in the inducement. According to Schroll, Carnesi lied when he said Defendants had the power to divest Schroll of all his company stock if he did not sign the agreements; and, had Schroll known of the truth, he would not have signed. (D.I. 6 at ¶¶ 98–103; *see also* D.I. 114 at 3.) Defendants argue that Schroll cannot show fraud in the inducement because fraud requires reliance, and the severance agreement contains an anti-reliance provision. (D.I. 109 at 13–18; D.I. 122 at 7–10.)

According to the Delaware Supreme Court, a clause that, "in essence, states that the parties . . . do not rely on any written or oral representations not expressly written in [the] contract . . . does not preclude a claim based upon fraudulent misrepresentations." *Norton v. Poplos*, 443 A.2d 1, 6 (Del. 1982). On the other hand, courts in Delaware have held that clear anti-reliance clauses are enforceable in certain situations involving negotiated commercial contracts between sophisticated parties with equal bargaining strength. *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1060–64 (Del. Ch. 2006) (surveying Delaware law); *see also RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 119 (Del. 2012) (stating that Delaware courts will enforce a non-reliance clause in "an agreement of sale or merger").

The undisputed facts of record here reflect that the severance agreement was not a commercial contract entered into between sophisticated business entities. Nor is there any suggestion in the record that the severance agreement generally—or the anti-reliance clause specifically—was negotiated. Under these circumstances, which do not involve a negotiated commercial contract between sophisticated parties with equal bargaining strength, *Norton v.*

11

*Poplos* applies. Schroll is not precluded from attempting to demonstrate that he was fraudulently induced to enter into the agreements.

Because Defendants' only argument in support of summary judgment on the remainder of Schroll's claims is their assertion that the anti-reliance clause in the severance agreement bars Schroll's claim of fraudulent inducement, and because the Court disagrees, the Court will deny Defendants' motion for summary judgment on the remainder of Schroll's claims (*i.e.*, all claims except Schroll's request for a declaratory judgment of duress). The Court will also deny Defendants' request for summary judgment on its counterclaim, which Defendants characterize as the "flip side of their release defense." (D.I. 109 at 18.)

## V.   CONCLUSION

The Court will (1) grant Defendants' motion for summary judgment (D.I. 108) in favor of Defendants on Plaintiff's claim for a declaratory judgment that the severance and stock repurchase agreements are unenforceable due to duress and (2) deny the remainder of Defendants' motion for summary judgment.

A separate order will be entered.